UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARLTON JOLLEY,                          :
                                         :
          Petitioner,                    :
                                         :           PRISONER
V.                                       :   CASE NO. 3:04-CV-1582(RNC)
                                         :
CORRECTIONAL MANAGED                     :
HEALTH CARE, ET AL.,                     :
                                         :
          Respondents.                   :

RULING AND ORDER

Plaintiff, an inmate in the custody of the Connecticut
Department of Correction ("DOC") at MacDougall-Walker
Correctional Institution, brings this action pursuant to 42
U.S.C. § 1983 claiming principally that persons responsible for
providing health care services to DOC inmates have been
deliberately indifferent to his serious medical and dental needs
in violation of the Eighth Amendment.[1]  The amended complaint
also alleges that the diet provided by the DOC is nutritionally
deficient, meals prepared in the kitchen at MacDougall-Walker
have been contaminated with chemicals used to clean the floor,
the air in plaintiff's living unit is detrimental to his health
due to inadequate cleaning of the heating and air conditioning

---

[1] During the pendency of this case, plaintiff has twice
moved for interim injunctive relief requiring that he be provided
with certain diagnostic tests, consultations with specialists,
medicines and other treatments.  Both motions were denied.  See
Jolley v. Correctional Managed Health Care, 2007 WL 2889469 (D.
Conn. Sept. 27, 2007); Jolley v. Correctional Managed Health
Care, 2006 WL 2474288 (D. Conn. Aug. 25, 2006).  Familiarity with
these rulings is assumed.

system, and he has been subjected to retaliation in violation of the First Amendment for filing lawsuits and grievances.  In addition to these federal claims, the amended complaint seeks relief under state law for breach of contract, negligence and medical malpractice.

Named as defendants in the amended complaint are:

- CMHC, a division of the University of Connecticut Health Center, which provides health care services to persons in DOC custody pursuant to a memorandum of agreement between CHMC and DOC.  CMHC has a Utilization Review Committee ("URC"), which is responsible for reviewing requests for non-emergency specialized treatment.

- CMHC's Field Operations Director Clyde McDonald, who is responsible for ensuring the delivery of health, dental and pharmacy services to DOC inmates in accordance with the memorandum of agreement between DOC and CMHC;

- CMHC's Health Services Administrator Richard Furey, who oversees the implementation of policies regarding management of health services at MacDougall-Walker;

- Leslie Cutler, D.D.S., Ph.D., who served as Chancellor and Provost of the UCONN Health Center from 1992 to 2000;

- numerous physicians, nurses, and dentists who are employed by CMHC or were so employed at relevant times, specifically:

- Edward Pesanti, M.D., who served as Medical Director of

CMHC from December 1997 to July 2002;

- Mark Buchanan, M.D., who has served as Clinical Director of CMHC since May 2002;

- Timothy Silvis, M.D., a specialist in internal medicine who has acted as plaintiff's primary treating physician;

- Sayeed Naqvi, M.D., a specialist in family medicine who serves on the URC;

- Ricardo Ruiz, M.D., an internist who serves on the URC;

- Monica Farinella, D.O., a specialist in gastrointestinal matters who serves on the URC;

- Cheryl Graham Williams, R.N.;

- Jeff Sprague, R.N.;

- Gloria Suarez, R.N.;

- Margo Griffin, R.N.;

- George Haas, D.M.D., who provided dental treatment to the plaintiff at MacDougall-Walker;

- Irene Marion, D.D.S., who also provided dental treatment to the plaintiff at MacDougall-Walker;

- Craig McDonald, D.D.S., who examined and treated the plaintiff on several dates between March 2004 and January 2005;

- Alberto N. Toro, D.M.D., CMHC's Dental Service Coordinator since November 2003; and

- Lisa Jaser, a registered pharmacist, who was the director of pharmacy services for CHMVC from March 2002 to August

3

2006; plus

    - the following DOC personnel:

      - Commissioner Theresa Lantz;

      - Director of Clinical Services Edward Blanchette, M.D.;

      - Robert Frank, former Director of Food Services for DOC, who oversaw the food service operation at DOC before February 2007;

      - Correctional Director of Food Services Robert DeVeau, who designs all diets within DOC; and

      - Correctional Food Service Supervisor Ralph Carucci, who is responsible for preparation of meals at MacDougall-Walker.

    The defendants have moved for summary judgment on all the claims under § 1983.  They contend that CMHC is not a "person" subject to suit under the statute, the claims against certain defendants fail as a matter of law because there is no allegation or evidence that they were personally involved in an alleged violation of plaintiff's federal rights, the claims of deliberate indifference to plaintiff's medical and dental needs are barred by the doctrine of res judicata, the claims regarding the prison diet and unsanitary food preparation have no basis in fact, and the air quality and retaliation claims are insubstantial and lack a proper defendant.

    The defendants seek summary judgment on the negligence and medical malpractice claims on the ground that such claims must be

presented in the first instance to the Claims Commissioner.   See
Conn. Gen. Stat. § 4-160(a).   They seek summary judgment on the
contract claims on the ground that the plaintiff lacks standing
to bring them.

The motion for summary judgment is supported by affidavits
signed by each of the individual defendants attesting to their
involvement (or lack of involvement) in the matters encompassed
by the allegations in the amended complaint.   In addition to
these affidavits, defendants present portions of plaintiff's
extensive clinical record and transcripts of testimony in a state
habeas action in which he challenged the adequacy of his medical
care.   Plaintiff has responded to the motion by filing briefs,
affidavits and more than 260 exhibits.

After careful review of the voluminous materials in the
summary judgment record, I conclude that the defendants are
entitled to judgment as a matter of law on the claims brought
pursuant to § 1983.   I decline to exercise jurisdiction over the
state law claims, which are dismissed without prejudice.

I. Standard of Review

Summary judgment may be granted when, viewing the evidence
in the light most favorable to the non-moving party, the record
shows that there is no "genuine issue as to any material fact"
and the movant is "entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).   To withstand a properly supported motion

for summary judgment, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Conclusory allegations are insufficient.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)(to avoid summary judgment, plaintiff must offer "significant probative evidence tending to support the complaint").  In assessing the record, the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party.  See Anderson, 477 U.S. at 255.  If the record, construed in this manner, would permit a reasonable juror to find in favor of the plaintiff, summary judgment must be denied.  If no reasonable juror could find in favor of the plaintiff, summary judgment may be granted.

II.  Discussion

     A.  Section 1983 Claims

          1.  Claims Against CMHC

     Defendants correctly contend that CMHC is not subject to suit under 42 U.S.C. § 1983.  Section 1983 provides a cause of action against a "person" who violates another's federally protected rights while acting under color of state law.  A state agency is not a "person" within the meaning of § 1983.  This rule applies to CMHC because it is a division of a state agency, the University of Connecticut Health Center.  See Walker v. State of Connecticut, No. 06CV165, 2006 WL 1981783, at *2 (D. Conn. Mar.

15, 2006) (dismissing action against CMCH under § 1983 because CMHC is not a "person" within the meaning of the statute). Accordingly, the motion for summary judgment is granted as to all claims against CMHC under § 1983.

       2.  Eighth Amendment Claims

The Eighth Amendment's protection against cruel and unusual punishment applies to prison conditions. See Farmer v. Brennan, 511 U.S. 825, 828 (1994). Under the Eighth Amendment, a state must not deprive prisoners of "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety." Helling v. McKinney, 509 U.S. 25, 32 (1993). To establish an Eighth Amendment claim, a prisoner must prove both an objective element - that the deprivation was "sufficiently serious" - and a subjective element - that the defendant acted with "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834. See Wilson v. Seiter, 501 U.S. 294, 303 (1991). An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. This culpable state of mind is equivalent to criminal recklessness. Id. at 839-40; see Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).

a.  Medical Care

Because an inmate must rely on prison officials to treat his medical needs, failure to provide an inmate with necessary medical care may constitute cruel and unusual punishment in violation of the Eighth Amendment in some circumstances.  To prevail on a claim for denial of medical treatment in violation of the Eighth Amendment, a plaintiff must prove that the defendant acted with "deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 104 (1976); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  A serious medical need is one that "may produce death, degeneration or extreme pain."  Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005).  A condition that will degenerate with increasingly significant complications if neglected over sufficient time presents a serious medical need under Second Circuit case law.  See Harrison v. Berkley, 219 F.3d 132, 137 (2d Cir. 2000).  Proving deliberate indifference to a serious medical need requires proof of an act or failure to act by the defendant evincing a conscious disregard of a substantial risk of serious harm.  See Hernandez, 341 F.3d at 144.  In other words, the plaintiff must prove that the defendant acted or failed to act while actually aware of a substantial risk that serious harm would result.  Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).  Refusing to treat a progressively degenerative condition that is potentially

dangerous and painful if left untreated may constitute deliberate
indifference.  See Harrison, 219 F.3d at 138-39.  Similarly,
prolonged delay in providing necessary treatment may support an
inference of deliberate indifference.  See Hathaway v. Coughlin,
37 F.3d 63, 67 (2d Cir. 1994).  On the other hand, negligent
diagnosis and treatment do not establish the requisite culpable
state of mind.  See Estelle, 429 U.S. at 106 ("Medical
malpractice does not become a constitutional violation merely
because the victim is a prisoner."); Hernandez, 341 F.3d at 144
(medical malpractice is insufficient to support a constitutional
claim unless it involves conscious disregard of a substantial
risk of serious harm); Smith v. Carpenter, 316 F.3d 178, 184 (2d
Cir. 2003) ("The Eighth Amendment is not a vehicle for bringing
medical malpractice claims, nor a substitute for state tort
law.").

Plaintiff has been in DOC custody since 1989.  For many
years, he has complained repeatedly to medical personnel about a
variety of health problems, principally abdominal pain,
epigastric pain, constipation, acid reflux, back pain, shoulder
pain, allergies, sinus congestion and headaches.  Plaintiff
contends that these conditions require specialized tests and
treatment, which he has not received.  Defendants acknowledge
that plaintiff has irritable bowel syndrome and an acid reflux
condition, is frequently constipated and has some stomach pain.

9

They contend that these are the only medical conditions he has, that none of them presents a serious medical need for purposes of the Eighth Amendment, and that the treatment plaintiff has received is appropriate.

In seeking summary judgment on plaintiff's medical claim, defendants contend that the claim is barred by res judicata as a result of a decision in a state habeas case in which plaintiff challenged the constitutionality of his medical care.  See Jolley v. Warden, No. TSR-CV-04-400090-S.  Res judicata does not apply unless the state habeas court had authority to award damages for a constitutional violation.  See Burgos v. Hopkins, 14 F.3d 787 (2d Cir. 1994); Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986).  The Connecticut Superior Court was not empowered to award damages in the habeas action.  See Morgan v. Warden, No. CV023711, 2003 WL 21040504 (Conn. Super. Ct. April 25, 2003).  Accordingly, plaintiff's medical claims are not barred by res judicata.

Though res judicata does not apply, collateral estoppel precludes the plaintiff from relitigating issues that were actually decided in the medical habeas case.  See Kulak v. City of New York, 88 F.3d 63, 71-72 (2d Cir. 1996) (applying collateral estoppel to bar relitigation in a section 1983 case of issues previously decided in a state habeas proceeding); Charles v. Maleh, No. 3:02-CV-1341(AWT), 2006 WL 581206, *5 (D. Conn.

March 8, 2006)(same).[2]  Collateral estoppel applies when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."  Epperson v. Entertainment Express, Inc., 242 F.3d 100, 108 (2d Cir. 2001) (quoting United States v. Hussein, 178 F.3d 125, 129 (2d Cir. 1999) (internal quotation marks and citation omitted)).  All these requirements are satisfied with regard to the bulk of plaintiff's medical claims.

In the medical habeas case, filed in September 2004, plaintiff claimed that he was suffering from abdominal pain, epigastric pain, constipation, sinus congestion and headaches. The habeas petition alleged that DOC's response to plaintiff's complaints was unacceptable, in part because the URC was refusing to provide him with access to certain diagnostic consultations and tests.  Responding to the allegations in the habeas petition, DOC stated that plaintiff was receiving appropriate treatment and that there had been no deliberate indifference to his medical needs.

---

[2] In support of their argument based on res judicata, defendants rely on the decision in Charles v. Maleh.  In that case, the Court said that relitigation of plaintiff's medical claims in federal court was barred by collateral estoppel, not res judicata.

The state habeas court heard testimony on July 19, 2005, and August 9, 2005.  <u>See</u> Mem. Opp'n Mot. Summ. J., Exs. 70 and 113. Plaintiff called as an expert witness Dr. Jacinta Lawrence, then a resident in gastroenterology at UCONN, who had seen the plaintiff during a consultation at a clinic.  She testified regarding plaintiff's complaints of abdominal pain, constipation and epigastric pain, and her request that he receive certain diagnostic testing, which the URC had not approved.[3]  Also called to testify were Dr. Buchanan, head of the URC, and Dr. Silvis, plaintiff's primary treating physician, both defendants in the present case.  Dr. Buchanan testified regarding URC's role in considering non-emergency requests for diagnostic tests for inmates, and its denial of requests for diagnostic tests made on behalf of the plaintiff.  Dr. Silvis testified as to plaintiff's complaints of shoulder, neck, back and stomach pain, constipation, headaches, sinus congestion and allergies and the treatment plaintiff received, including prescription medications and over the counter medications available in the prison commissary.  Plaintiff had an opportunity to question each witness and testify on his own behalf.

On August 9, 2005, after both sides rested, the state court issued a bench ruling denying the medical habeas petition.

---

[3] Dr. Lawrence's request that plaintiff receive certain specialized tests assumed that plaintiff had experienced significant weight loss, which was incorrect.

Crediting the testimony of Drs. Buchanan and Silvis, the court found that DOC's response to plaintiff's medical needs was "appropriate."  Plaintiff's subjective complaints of constant pain did not warrant a different conclusion because "objective testing" had shown "no significant abnormality in [his] physical condition."  In addition, plaintiff's complaints of constant debilitating pain were inconsistent with his demeanor during the trial and "completely at odds" with his "ability to participate in a whole range of physical activities," including "physical jobs . . . reffing basketball games and lifting weights." Accordingly, plaintiff's claim that DOC had been deliberately indifferent to his serious medical needs was rejected.  The denial of the medical habeas petition was affirmed by the Appellate Court, see Jolley v. Commissioner of Correction, 98 Conn. App. 597, 910 A.2d 982 (2006), and the Supreme Court denied the plaintiff's request for review, see Jolley v. Commissioner of Correction, 282 Conn. 904 (2007).

The decision in the medical habeas case bars plaintiff from relitigating his constitutional challenge to the medical care he received through the date of the habeas hearing on August 9, 2005.[4]  This leaves plaintiff's claim based on the care he

---

[4] The following claims regarding plaintiff's medical care, all based on acts or omissions preceding August 9, 2005, are barred by collateral estoppel: claims against members of the URC (Drs. Buchanan, Silvis, Farinella, Ruiz and Naqvi) alleging deliberate indifference based on the URC's denial of access to

received from the time the habeas petition was denied until he filed his amended complaint in this action on October 4, 2005. After careful review of the record covering this interval of approximately two months (i.e. from August 9, 2005 through October 4, 2005), I conclude that plaintiff's claim of deliberate indifference to his medical needs during this period does not raise a genuine issue of material fact and that the defendants are entitled to judgment as a matter of law.

After the state court denied the medical habeas petition on August 9, 2005, plaintiff continued to complain of headaches, back and shoulder pain, constipation, epigastric pain, allergies and nasal congestion.  He was seen in the medical department at MacDougall-Walker in August, September and October 2005.  During this time, he received Tylenol for pain, a laxative for constipation, and a prescription medication for heartburn and acid reflux.  In light of plaintiff's continuing complaints of gastrointestinal problems, Dr. Silvis ordered that plaintiff undergo an upper gastrointestinal series ("UGI"), which was performed in December 2005.  The UGI showed gastroesophageal

---

diagnostic tests, consultations with specialists and other treatment; claims against Dr. Silvis that he was deliberately indifferent to plaintiff's medical needs in the course of treating the plaintiff; claims against Health Services Administrator Furey that he was deliberately indifferent to plaintiff's medical needs when he implemented CMHC policies concerning treatment, consultations, diagnostic tests and non-prescription medications, and claims of deliberate indifference against Nurses Williams, Sprague, Suarez and Griffin.

reflux and scarring on the duodenal bulb.  After consulting with a gastroenterologist, Dr. Silvis gave plaintiff a prescription for a medication used to treat irritable bowel syndrome while also continuing him on a medication used to treat acid reflux. Plaintiff also underwent an x-ray of his sinuses.  The x-ray revealed some clouding of the frontal sinuses, but the radiologist did not recommend any follow-up x-rays or other course of treatment.  In response to plaintiff's complaints of nasal congestion, he was given decongestant tablets on several occasions.  In addition, Dr. Silvis prescribed Flexeril for plaintiff's back pain, which plaintiff reported was effective. Nothing more was done for his headaches during this period because an MRI of his head, taken on August 3, 2005, was negative.

Viewing this record in a light most favorable to the plaintiff, and giving him the benefit of every reasonable inference, no reasonable jury could find that any of the named defendants was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment during the relevant period.  Even assuming plaintiff's medical needs were sufficiently serious to give rise to Eighth Amendment protection, he has not shown an act or failure to act by any named defendant evincing conscious disregard of a substantial risk of serious harm to his health.  At most, the summary judgment record shows a

disagreement between plaintiff and medical personnel concerning the seriousness of his health problems and the need for further or different treatment of his conditions.  This is clearly insufficient to support a claim for deprivation of medical treatment in violation of the Eighth Amendment.  See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986); see also Estelle, 429 U.S. at 105-06.

In his most recent submission opposing summary judgment on the medical claim, plaintiff emphasizes that he has severe stomach pain due to chronic use of Ibuprofen and that he was not warned about this risk.  See Pl.'s Reply to Defs.' Mem. in Reply to Pl.'s Resp. to Defs.' Mot. For Summ. J. ("Pl.'s Reply") at 1-5.  Crediting plaintiff's allegations that he has severe stomach pain and was not adequately warned, the record now before the Court is legally insufficient to support a reasonable finding that the pain plaintiff complains about is probably due to chronic use of Ibuprofen.  Nor does it support a reasonable finding that a named defendant actually knew that plaintiff's use of Ibuprofen entailed a substantial risk of causing serious harm to his health.

Plaintiff's most recent submission also emphasizes that as a result of a policy decision by CMHC requiring inmates to purchase over the counter medications in the commissary, he has not received Metamucil by prescription since October 2007.  See Pl.'s

16

Reply at 5-6.  Before this policy change went into effect, plaintiff received Metamucil pursuant to a prescription for a fiber supplement to treat his chronic constipation.  Plaintiff contends that the failure to continue to provide him with Metamucil by prescription constitutes a failure to follow a treatment plan, which can support an Eighth Amendment claim under Estelle.  See id. at 6.  Technically speaking, plaintiff's claim based on the discontinuation of prescription Metamucil is not properly before the Court because it arose after the amended complaint was filed and he has not moved for leave to file a supplemental pleading to add this claim to the case as required by Rule 15(d) of the Federal Rules of Civil Procedure.  More importantly, plaintiff does not allege that he is unable to purchase Metamucil in the commissary.  In the absence of such an allegation, plaintiff appears to be claiming that because he previously received Metamucil free of charge pursuant to a prescription, the Eighth Amendment requires the defendants to continue to provide him with Metamucil at no charge, although he is able to buy it in the commissary.  Estelle imposes no such obligation.[5]

---

[5] In opposing summary judgment, plaintiff alleges various other matters that did not occur until after he filed his amended complaint, including the following: the URC's denial of diagnostic tests for plaintiff's complaint of abdominal pain on February 28, 2006; switching plaintiff from Prevacid to Zantac in March 2006; Dr. Buchanan's refusal to approve Dr. Silvis's order of Prilosec for the plaintiff in June 2006; DOC's refusal to

b.  Dental Care

Plaintiff also alleges deliberate indifference to his need
for dental care.  An inmate's serious dental needs can give rise
to Eighth Amendment protection.  See Harrison, 219 F.3d at 136-
37; Dean v. Coughlin, 804 F.2d 207 (2d Cir. 1986).  Plaintiff
alleges that defendants have been deliberately indifferent to his
periodontal disease, which constitutes a serious condition.[6]
Defendants contend that this claim is barred in view of a dental
habeas case plaintiff filed in state court in 2003.  In his
dental habeas case, plaintiff complained that DOC officials were
failing to provide treatment for his periodontal disease.  The
dental habeas petition was precipitated by an examination
performed by Dr. Irene Marion, a defendant in this case.  As a

_____

provide plaintiff with an endoscopy, pepto-bismol and a bed wedge
in October 2006; and the URC's denial of diagnostic tests for
plaintiff's complaints of abdominal pain in April 2007.  Like the
policy change resulting in the discontinuation of free Metamucil
in October 2007 discussed in the text, these matters are not
properly before the Court because plaintiff has not sought leave
to add them to the case.  On the present record, moreover, none
of them can be said to involve an act or failure to act evincing
conscious disregard of a substantial risk of serious harm to
plaintiff's health.

[6] "Periodontitis, like gingivitis, is a serious infection of
the gum area, that, if left untreated, can lead to tooth loss.
As the disease progress, gums separate from the teeth, forming
pockets (spaces between the teeth and gums) that become infected.
Pockets deepen as the disease progresses and more gum tissue and
bone are destroyed."  Rashid v. McGraw, 2006 WL 1378945,*1 No. 01
Civ. 10996(DAB) (S.D.N.Y. 2006)(definition of periodontitis taken
from website for American Academy of Periodontology, found at
http://www.perio.org/consumer/2a.html).

18

result of the examination, Dr. Marion submitted a utilization
review request on September 26, 2003, recommending periodontal
treatment for "long-standing periodontal disease."  The request
stated that surgery was indicated.  On September 30, 2003, Dr.
Marion's request was denied by the URC.  The habeas petition
requested an order directing DOC to provide plaintiff with a form
of treatment called scaling and root planing.

On March 4, 2004, Dr. Craig McDonald, a dentist employed by
CMHC and a defendant here, examined the plaintiff in preparation
for testifying in the dental habeas case.  The examination was
done at the request of Dr. Albert Toro, CMHC's coordinator of
dental services, who is also a defendant in this case.  Dr.
McDonald concluded that plaintiff had "non-plaque, non-calculus
induced periodontal disease of his 2nd molars (an unusual
condition)."  Dr. McDonald did not recommend referral to a
periodontal specialist, however.  He has submitted an affidavit
stating that the molars in question "had a poor prognosis and
therefore a referral to a periodontist was not appropriate."  The
affidavit states that plaintiff's "remaining teeth appeared
stable and [his] home care was acceptable."  Dr. Toro agreed that
a referral to a periodontist was unnecessary.

In September 2004, while the dental habeas case remained
pending, Dr. Mark Buchanan, CNHC's Clinical Director, authorized
a referral to a periodontist at UCONN.  Dr. Buchanan has

submitted an affidavit stating that he authorized the referral because Dr. Marion and Dr. Toro had different opinions concerning whether the plaintiff had periodontal disease.  As a result of this referral, plaintiff was examined by a periodontal specialist at UCONN, Dr. Kevin Purviance.  Dr. Purviance diagnosed "localized severe aggressive periodontal disease" and recommended extraction of seven molars in addition to a treatment plan.  The treatment plan called for scaling, planing and curettage by a dentist every three months for eighteen months.

On January 14, 2005, the dental habeas petition was denied after an evidentiary hearing.  The court entered the following written order:

> The respondent is to continue to comply with the periodontal plan that has been set in place.  This is to include the issuance of a proxy brush to petitioner as long as it causes no security breach.  Respondent [sic] has not shown deliberate indifference and the petitioner has been given appropriate care. If the periodontist recommends surgery then the petitioner should be permitted to have the surgery.

On February 18, 2005, plaintiff underwent periodontal evaluation and treatment, including deep scaling and root planing.  On March 22, 2005, he was re-examined by Dr. Purviance. Based on this re-examination, Dr. Purviance recommended a treatment plan consisting of selective scaling and root planing, quarterly prophylactic care by a general dentist and home care. Dr. Purviance did not require a follow-up consultation by a periodontist.

20

There is no evidence that the treatment plan put in place by Dr. Purviance was not adhered to before plaintiff filed his amended complaint in this action on October 5, 2005.  After the amended complaint was filed, plaintiff did not receive quarterly care in December 2005 and March 2006.  Plaintiff brought this to the attention of the state habeas court through a motion for contempt.  It is undisputed that after the motion was filed, Dr. Toro scheduled additional visits to make up for the ones that had been missed.  Plaintiff then filed a motion for interim injunctive relief in this case.  In response to the motion, Dr. Toro submitted an affidavit stating that DOC was complying with the treatment program recommended by Dr. Purviance.  Plaintiff did not dispute this and his request for interim injunctive relief was therefore denied.

Plaintiff argues that the dental habeas case should not preclude his claim under § 1983 because his habeas petition led to his receipt of periodontal treatment.  I agree that the dental claim is not precluded, but for different reasons.  As noted earlier in connection with plaintiff's medical claim, the doctrine of res judicata does not apply because the habeas court was not empowered to award damages.  With regard to collateral estoppel, defendants have not provided a transcript of the dental habeas hearing.  In the absence of a transcript, it is unclear whether plaintiff had a full and fair opportunity to litigate,

21

which must be found in order for collateral estoppel to apply.

Accordingly, I turn to the merits of the dental claim.  In his most recent submission, plaintiff states that his claim is based on CMHC's failure to provide him with proper treatment for his periodontal disease until 2005.  See Pl.'s Reply at 8-11. Plaintiff alleges that periodontal treatment was not provided before then because CMHC has a policy of denying inmates access to periodontal treatment for budgetary reasons.  He further alleges that he never would have received periodontal treatment were it not for the court order in the dental habeas case. Defendants acknowledge that advanced periodontal treatment is generally not authorized because DOC regards extraction as a medically appropriate course of action.  See Defs.' Mem. of Law at 15.[7]

Viewing the record most favorably to the plaintiff, a jury could find that as of July 2003, when Dr. Marion recommended that plaintiff receive specialized periodontal treatment, plaintiff's periodontal disease met the standard of a serious medical need under the Eighth Amendment.  See Charles, 2006 WL 581206,*7 (in case brought by DOC inmate against dentists employed by CMHC, defendants did not dispute that plaintiff's periodontal disease satisfied objective component of deliberate indifference claim);

_____

[7] Defendants state that this policy is modeled on Title 19, which generally does not provide for periodontal care.

22

see also Chance, 143 F.3d, at 702 (2d Cir. 1998) ("while losing three teeth is not the same as losing an arm or a leg, it is not an inconsequential harm").  A jury could also infer that the proper treatment for plaintiff's periodontal disease at the time it was diagnosed by Dr. Marion in 2003 was the treatment he received beginning in 2005.  The issue, therefore, is whether the delay in treatment provides a basis for a finding that any of the named defendants was deliberately indifferent to a serious need in violation of the Eighth Amendment.

        URC Defendants

Plaintiff contends that the members of the URC who rejected Dr. Marion's request are liable because they denied treatment recognized to be needed.  At the time the URC denied Dr. Marion's request, the only opinion by a qualified practitioner concerning plaintiff's condition and need for treatment was that of Dr. Marion who stated that surgery was indicated for long-standing periodontal disease.  The URC, which included no dentists, did not seek a second opinion from a qualified source with regard to plaintiff's condition and need for treatment.  Instead, the members of the URC simply relied on CMHC's blanket policy, which denied surgery for periodontal disease on the ground that extractions are an acceptable treatment.  The issue is whether this renders them liable to the plaintiff for violating the Eighth Amendment.

Denial of indicated treatment may support an Eighth Amendment claim when there is no difference opinion as to the right form of treatment.  See Harrison, 219 F.3d at 139 (refusal to treat cavity for nearly a year unless patient consented to extraction of another decayed tooth).  Here, there was no such consensus due to CMHC's blanket policy under which extractions were deemed to be an acceptable alternative to surgery. Plaintiff presents no evidence that Dr. Marion or anyone else thought that surgery was the only appropriate treatment for his condition.  Indeed, when plaintiff was eventually examined by a periodontal expert, surgery was not the recommended treatment. Dr. Purviance's treatment plan approved by the state habeas court included extraction plus non-extraordinary care, some of which plaintiff was already receiving.  In these circumstances, plaintiff cannot prove that the URC defendants, by virtue of their denial of Dr. Marion's request, violated the Eighth Amendment.

The URC defendants contend that they are entitled to qualified immunity because their decision to deny Dr. Marion's request in accordance with CMHC's blanket policy was not contrary to clearly established law.  I agree.  It is undisputed that at the time the request was denied, advanced periodontal treatment had never been provided by DOC.  See Charles, 2006 WL 581206 *2 ("Periodontal treatment, advanced treatment of the gums, has

never been provided by the Department of Correction."). In 1999, DOC's refusal to provide treatment other than extraction had been sustained in a case in which an inmate with periodontal disease declined to consent to extraction and sought an injunction requiring DOC to provide different treatment. See Channer v. Wezner, No. CV 98418910, 1999 WL 49396,*1 (Conn. Super. 1999) (extraction acceptable care for periodontal disease even if plaintiff's preferred treatment was superior); see also Hogan v. Russ, 890 F.Supp. 146, 149 (N.D.N.Y. 1995) (failure to provide advanced periodontal treatment does not demonstrate deliberate indifference to a serious dental need; extraction is appropriate treatment). Plaintiff cites no case from the Second Circuit clearly establishing that the members of the URC were obliged to approve Dr. Marion's request notwithstanding CMHC's blanket policy.[8]

### Dr. McDonald and Dr. Toro

The summary judgment record indicates that Dr. McDonald

---

[8] In Johnson v. Wright 412 F.3d 398 (2d Cir. 2005), the Court of Appeals held that adhering to a blanket policy regarding treatment for hepatitis C could amount to a constitutional violation. In that case, treating physicians repeatedly advised a utilization review committee that the blanket policy should not be applied to the plaintiff. The Court concluded that, in view of the unanimous opinion of the treating physicians that the policy should not be adhered to in the plaintiff's case, reflexive reliance on the medical soundness of the policy could be considered deliberate indifference. Id. at 406. At the time the URC denied Dr. Marion's request, Johnson had not been decided.

examined the plaintiff in March of 2004, approximately six months after Dr. Marion's request was denied and plaintiff filed his state habeas petition.  In his affidavit, Dr. McDonald states that he did not recommend a referral to a periodontal expert because the prognosis for the affected teeth was poor and the remaining teeth were healthy.  Dr. Toro signed off on this diagnosis and assessment.  Dr. McDonald did not foresee a serious risk of harm to plaintiff after the diseased teeth were extracted so it follows that he cannot have consciously disregarded such a risk.

Dr. McDonald's diagnosis of plaintiff's condition, with which Dr. Toro concurred, was substantively the same as Dr. Purviance's diagnosis the following November.  Both Dr. McDonald and Dr. Purviance diagnosed periodontal disease and recommended extraction of the affected molars.  Dr. McDonald's diagnosis was not inconsistent with Dr. Marion's diagnosis and the suggested treatment was consistent with the plan Dr. Purviance subsequently recommended.  Plaintiff's allegation that he should have received different treatment in March 2004 does not support a reasonable inference that Dr. McDonald and Dr. Toro were deliberately indifferent to his needs in violation of the Eighth Amendment.

Dr. Haas

Plaintiff claims that Dr. Haas failed to properly diagnose and treat his periodontal disease.  He points to an examination

26

conducted by Dr. Haas in 2001, at which time plaintiff had bleeding gums.  Dr. Haas did not diagnose periodontal disease then or at any time before Dr. Marion's diagnosis in 2003.

A reasonable jury could infer from Dr. Marion's diagnosis of long-standing periodontal disease that plaintiff had the disease while being treated by Dr. Haas and that he failed to diagnose it in a timely manner.  But the evidence submitted by plaintiff, viewed fully and most favorably to him, does not prove that Dr. Haas committed malpractice, much less that he was criminally reckless in violation of the Eighth Amendment.  Even assuming plaintiff could find an expert to testify that Dr. Haas did commit malpractice, mere malpractice does not amount to a constitutional deprivation.  See Estelle, 429 U.S. at 107; Hernandez v. Keane, 341 F.3d 137 (2d Cir. 2003) (evidence of negligence or medical malpractice is insufficient to support a claim of deliberate indifference).

### Dr. Marion

It is undisputed that when Dr. Marion diagnosed plaintiff's periodontal disease, she promptly requested that he be referred to a periodontist for specialized treatment.  In her affidavit, Dr. Marion states that she was able to provide only limited periodontal treatment herself.  One of the procedures ultimately recommended by Dr. Purviance, scaling, was within Dr. Marion's capacity, and she provided this treatment to the plaintiff.

Nothing in the summary judgment record suggests that Dr. Marion had any additional control over plaintiff's periodontal treatment.  Dr. Marion treated plaintiff to the best of her abilities, and plaintiff offers no allegation or evidence to the contrary.  If anything, his submissions make it clear that he does not believe she was deliberately indifferent to his needs.

     c. Other Claims

       Food

Plaintiff claims that the food served at MacDougall-Walker is nutritionally deficient.  The Eighth Amendment requires that prisoners be served nutritionally adequate food.  See Hutto v. Finney, 437 U.S. 678, 683 (1978); Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002); Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983).  DOC's Director of Food Services has submitted an affidavit stating that the standard diet provided to inmates in DOC custody exceeds recommended dietary guidelines for males aged 25 to 50 with regard to protein, iron, potassium, calcium, magnesium, manganese, selenium, thiamin, folate, niacin, riboflavin, pantothenic acid and vitamins A, B-12, C, D, E and K. Plaintiff submits no evidence rebutting this affidavit.  Nor does he offer any other evidence to support a finding that the standard diet provided by DOC is unconstitutional.

Plaintiff complains that DOC does not provide him with a high fiber diet to treat his chronic constipation.  Defendants do

not deny this but contend that plaintiff can obtain fiber supplements from the prison pharmacy or the commissary. Plaintiff concedes this and fails to explain why the prison's diet as supplemented is constitutionally inadequate. Accordingly, defendants' motion for summary judgment is granted on the claim regarding the nutritional adequacy of the meals provided at MacDougall-Walker.

### Air Quality

Plaintiff alleges that air filters in his housing unit were changed only twice a year and that the air vents were not cleaned unless the Occupational Safety and Health Administration was scheduled to inspect the system.  He also alleges that for several days in September 2005, inmates painted, sanded, stripped and waxed floors in the housing unit and the air vents were not opened to permit fumes to escape.  He alleges that poor air quality in the unit causes him to suffer headaches and nasal congestion.  In addition, he alleges that odors from the septic system permeate the cells.

In response to this claim, William Clifford, the maintenance supervisor at MacDougall-Walker since 1994, attests that the air filters for the main circulation system are changed six times a year.  He also states that OSHA and the Connecticut Department of Environmental Protection have determined that the air quality in plaintiff's living unit exceeds their standards.  The evidence

plaintiff submits to counter this affidavit is an unlabeled plastic bag containing what he claims is dust collected from an air vent in his cell.  Pl. Ex. 162.  Plaintiff contends that two correctional officers are willing to testify regarding the dust in the building and their concerns about air quality, but he submits no affidavit from either officer.  Plaintiff has submitted an affidavit from another inmate who states that he suffered from a runny nose, nose bleeds, congestion and headaches during his incarceration.  Mem. Opp'n Mot. Summ. J., Ex. C.  However, this inmate suffered from allergies and congestion before his incarceration, and plaintiff has not submitted evidence suggesting that either his or the other inmate's congestion and headaches are the result of dust in the air vents.  Plaintiff does not allege that the odors from the septic system have caused him any injury.

Plaintiff's allegations regarding the air quality in his living unit are not to be taken lightly.  His air quality claim fails as matter of law, however, because he offers no evidence that any of the named defendants is responsible for maintaining proper air quality in his living unit.  As discussed earlier, evidence of a defendant's personal involvement in an alleged violation is required to support a claim under § 1983.  Because such evidence is lacking, plaintiff's air quality claim must be dismissed.

### Cleaning Agents in Kitchen

Plaintiff alleges that in 2004 and 2005, during food preparation in the kitchen at MacDougall-Walker, defendant Ralph Carucci, a food service supervisor, permitted inmates to power wash floors using a disinfectant called Suma Tempo, which is known to cause gastrointestinal problems.  Plaintiff contends that the spray contaminated food he consumed and is, in part, responsible for his gastrointestinal problems.  The defendants deny that disinfectant was used to clean the floors during food preparation and move for summary judgment on the ground that plaintiff has presented no evidence linking his abdominal pain to ingestion of the disinfectant.

In support of this claim, plaintiff submits affidavits from two inmates who worked in the kitchen in 2004 and 2005. According to these affidavits, inmates were ordered to power wash the floor with a dishwashing chemical or soap during food preparation.  See Pl. Exs. 150 & 230.  Crediting these affidavits, plaintiff still has not proven a causal connection between the dishwashing liquid and his gastrointestinal problems.

Plaintiff also submits a copy of a label from a container indicating that Suma Tempo is corrosive and a severe, eye, skin, lung and digestive irritant.  See Pl. Ex. 229.  There is no medical evidence linking plaintiff's abdominal pain to exposure to Suma Tempo, nor has he provided evidence that other inmates

eating the same food suffer from similar abdominal pain.
Accordingly, the motion for summary judgment is granted as to the
claim of unhealthy kitchen conditions.

<u>Extended Family Visits</u>

Plaintiff, who does not have children, contends that he
should be able to participate in an extended family visit program
despite a July 1995 policy directive requiring inmates to have
children in order to participate.  Plaintiff alleges that in
November 1995, Warden Rodriguez informed inmates who had been
approved for the program before the policy change that they would
be allowed to participate even if they had no children.
Plaintiff provides evidence that two other inmates who
participated in the program before July 1995 and do not have
children were permitted to participate in the new program.
Plaintiff was denied participation in 2003 and alleges that the
denial was in retaliation for his successful lawsuits against the
DOC in 2001.

The First Amendment protects inmates against retaliation for
filing lawsuits.  To prevail on a retaliation claim, an inmate
must show that his protected conduct was a "substantial or
motivating factor" in the alleged retaliation.  <u>Friedl v. City of
New York</u>, 210 F.3d 79, 85 (2d Cir. 2000).  The claim must be
supported by specific facts; conclusory statements are
insufficient.  See <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir.

2003).

Plaintiff's retaliation claim fails as a matter of law because the individuals responsible for the alleged retaliation (Warden Carter, Warden Rodriguez, and Peter Murphy) are not defendants in this action.  Plaintiff offers no allegation or evidence that any of the named defendants was personally involved.  Accordingly, the retaliation claim must be dismissed.

    B.  <u>State Claims</u>

Plaintiff alleges that CMHC and other defendants have breached contractual obligations to provide appropriate care to persons in DOC custody.  He also claims that many of the defendants are liable for negligence and malpractice.  Because all the federal claims have been dismissed, I decline to exercise jurisdiction over these state law claims, which are dismissed without prejudice.

III.  <u>Conclusion</u>

For the foregoing reasons, defendant's motion for summary judgment [Doc. 84] is granted, the § 1983 claims are dismissed with prejudice, and the state law claims are dismissed without prejudice.

So ordered this 30th day of January 2009.


                     /s/ RNC
                  Robert N. Chatigny
            United States District Judge